**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1439

DONALD BLACK; MARCIA BLACK; LARRY MARTIN; REBECCA MARTIN; BARBARA THOMPSON; JAMES THOMPSON, for themselves and a class of similarly situated plaintiffs,

    Plaintiffs – Appellees,

  v.

MANTEI & ASSOCIATES, LTD.; RICKY ALAN MANTEI; CINDY CHIELLINI; CENTAURUS FINANCIAL, INC.; J.P. TURNER & COMPANY, LLC,

    Defendants – Appellants.

Appeal from the United States District Court for the District of South Carolina, at Columbia. Mary G. Lewis, United States District Judge. (3:23-cv-04149-MGL)

Argued: January 30, 2025       Decided: July 30, 2025

Before THACKER, RICHARDSON, and BENJAMIN, Circuit Judges

Affirmed by published opinion. Judge Richardson wrote the opinion, in which Judge Thacker and Judge Benjamin joined.

**ARGUED:** Joshua D. Jones, BRESSLER AMERY & ROSS, Birmingham, Alabama, for Appellant. Robert W. Humphrey, II, WILLOUGHBY HUMPHREY & D'ANTONI, P.A., Charleston, South Carolina, for Appellees. **ON BRIEF:** Joel H. Smith, Kevin J. Malloy, BOWMAN AND BROOKE LLP, Columbia, South Carolina, for Appellant Centaurus Financial, Inc. Michael H. Montgomery, MONTGOMERY WILLARD, LLC, Columbia,

South Carolina, for Appellants Mantei & Associates, Ltd.; Ricky Alan Mantei; and Cindy Chiellini. Cory Manning, Columbia, South Carolina, Joshua R. Lewin, NELSON MULLINS RILEY & SCARBOROUGH LLP, Miami, Florida, for Appellant J.P. Turner & Company, LLC. Mitchell Willoughby, Margaret M. O'Shields, Hunter R. Pope, WILLOUGHBY HUMPHREY & D'ANTONI, P.A., Columbia, South Carolina, for Appellees.

RICHARDSON, Circuit Judge:

This appeal is, at heart, just a fight over attorneys' fees. The district court ordered the Defendants in this case to pay the Plaintiffs' fees below. Defendants now seek to avoid paying, and on the other side, Plaintiffs ask us to award them additional fees for this appeal. Simple enough on its own. But the answer to their simple dispute lies at the end of a winding road of civil procedure and statutory interpretation. Keep in mind the heart of the appeal as we embark; it will serve as a compass in the fog.

Now for the fog. Plaintiffs filed a class action against Defendants in state court alleging violations of state securities laws. Thinking that the Securities Litigation Uniform Standards Act ("SLUSA") might preclude this case—*i.e.*, prohibit courts from hearing it—Defendants removed the case to federal court. 15 U.S.C. § 77p. In response, Plaintiffs amended their complaint to eliminate all possibility that SLUSA would apply. The district court accordingly remanded the case, explaining in an opinion how the class action no longer fell within SLUSA and how no other basis for federal jurisdiction was present. After three years of litigation in state court, Defendants removed the case a second time, making the same arguments the district court had rejected in its prior opinion. Unsurprisingly, the district court remanded the case a second time. And on top of remanding, the district court required Defendants to pay Plaintiffs' attorneys' fees.

We affirm the district court's award of fees. But we reject Plaintiffs' suggestion that we should assess additional fees for the cost of defending this appeal.

## I.      Background

This fight over fees turns primarily on the interpretation of three statutory provisions governing the removal of cases from state court to federal court:  15 U.S.C. § 77p, also known as SLUSA; 28 U.S.C. § 1441, the general removal provision for civil actions; and 28 U.S.C. § 1447, which sets out procedural rules after all removals.  It will be useful to have a brief overview of these statutes before we journey into the facts of this case.

### A.      Statutory Overview

SLUSA includes two subsections that we care about:  a preclusion provision, and a removal provision.  15 U.S.C. § 77p(b), (c).  SLUSA's preclusion provision says that, for certain class actions, when plaintiffs seek damages for harms related to securities listed on a national stock exchange, the case cannot be litigated under state securities law.  § 77p(b).  Specifically, SLUSA provides that no "covered class action" based on state law "may be maintained" by a private party alleging untruth or manipulation "in connection with the purchase or sale of a covered security."  *Id.*[1]  A "covered class action" can be multiple things, but here, it is a single suit seeking damages on behalf of more than 50 persons.[2]

---

[1] The full text of 15 U.S.C. § 77p(b):  "No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
(2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."

[2] There are other ways a class action can be "covered."  *See* §§ 77p(f)(2)(A)(i)–(ii).  Here, nobody challenges that the action is not a "covered class action" in the way described; the dispute is whether it involves "covered securities."

§ 77p(f)(2)(A)(i)(I).   A "covered security" is "a security listed on a national stock exchange." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 423 (2018) (citing § 77p(f)(3)).   Putting it all together, SLUSA bars—*i.e.*, "precludes"—class actions with more than 50 plaintiffs from seeking damages under state law related to securities that are listed on national stock exchanges.

SLUSA's removal provision provides:  "Any covered class action brought in any State court involving a covered security, as set forth in subsection (b) . . . shall be removable to the Federal district court." § 77p(c).   In other words, a case can be removed from state court to federal court if it is the kind of case that is precluded.  *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 643 (2006) ("[R]emoval and jurisdiction to deal with removed cases is limited to those precluded by the terms of subsection (b).").   SLUSA's removal provision ensures that "a defendant can enlist the Federal Judiciary to decide preclusion." *Id.* at 646.

The general removal statute for civil suits, 28 U.S.C. § 1441, is much broader than SLUSA's removal provision.   It permits defendants to remove a case from state court to district court when a district court would have had "original jurisdiction" over a case, *i.e.*, the case could have been filed in the district court in the first instance.  *See* § 1441(a).   This includes all cases raising a federal question, § 1331, and all cases between implicating diversity jurisdiction, § 1332.

Procedures for both types of removal, SLUSA and § 1441, are found in 28 U.S.C. § 1447, which applies to "any case removed from a State court."  § 1447(a).   Section 1447(c) requires a district court to remand a case if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction."   Furthermore, the order

5

remanding the case "may require the payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." § 1447(c). And finally, remand orders "based on lack of subject matter jurisdiction or defects in removal procedure" are "not reviewable on appeal or otherwise." *Quackenbush v. Allstate Ins.*, 517 U.S. 706, 711–12 (1996) (interpreting § 1447(d)).

## B.    Factual Background

Mantei & Associates is a brokerage firm that sells financial securities. They, along with the other defendants in this case, sold hundreds of securities to buyers, some of which were—and some of which were not—"covered securities." After their investments went south, some of the buyers banded together and filed a 2019 lawsuit in state court based on state securities law alleging that Defendants misrepresented the liquidity and value of the securities. Plaintiffs' original complaint sought damages related to what they called "Ripoff Products," which they alleged were "debt securities . . . [that] did not qualify as 'covered securities' for purposes of [SLUSA]." J.A. 400. At the same time, however, they alleged that the "Ripoff Products" included "one category of . . . debt instruments 'with an interest rate that was subject to fluctuations prior to maturity, which could decrease to zero based on market variables, and which has or had a maturity period greater than 10 years.'" *Black v. Mantei & Assocs., Ltd.*, 2019 WL 5085414, at *3 (D.S.C. Oct. 10, 2019) (quoting Plaintiffs' original complaint).

Defendants removed the case to federal court under SLUSA, asserting that that category of debt instruments in the "Ripoff Products" actually included covered securities. Plaintiffs moved to remand the case, but the district court denied the motion. It held that

6

the disavowal of SLUSA's application was a nonbinding legal assertion, and that the potential presence of covered securities in the "Ripoff Products" was sufficient to maintain federal jurisdiction over the suit. *Id.* at *2–3.

While still in federal court, Plaintiffs amended their complaint to make their disavowal of SLUSA legally binding. Instead of asserting something about the "Ripoff Products," the amended complaint stated that "Plaintiffs only seek recovery . . . for damages caused by products that do not qualify as 'covered securities' for the purposes of [SLUSA]." J.A. 639.[3] In other words, regardless of the securities in the list of "Ripoff Products," the suit could not involve any allegations of wrongdoing by Defendants in connection with, or seek any damages related to, covered securities.

The district court recognized that the amendment made two "key changes." *Black v. Mantei & Assocs., Ltd.*, 2020 WL 4432877, at *3 (D.S.C. July 31, 2020). First, it concluded that by "the plain language of the complaint, if a product is a covered security, it is automatically excluded from the lawsuit completely. *Id*. As such, "[a]ll purportedly fraudulent acts sued upon . . . under the [amended complaint] . . . have no connection with the purchase or sale of a covered security," meaning that "SLUSA no longer applie[d] to the case." *Id.* (quotation omitted). Second, it held that "no federal question remain[ed]" after SLUSA fell out of the picture. *Id.*

---

[3] As part of that amendment, Plaintiffs added that they sought only to certify the class of "South Carolina citizens and the estates of deceased South Carolina citizens, who . . . were sold . . . a debt instrument . . . that is not a 'covered security' under SLUSA." J.A. 657.

7

The district court also presciently recognized that the next step would be to determine which securities were covered so that damages relating to them would be excluded from the suit. It thus clarified that any dispute over whether a security was covered would be "insufficient to create a federal question" and so wouldn't provide a basis for subsequent removal based on federal question jurisdiction. *Id.* At the end, the district court remanded the case to state court.

After remand, litigation continued in state court based on the amended complaint. As the district court had predicted, the parties needed to sort out which securities were covered to determine the amount of recoverable damages. To help, Plaintiffs hired Dr. Craig McCann, an expert witness, who provided a list of all the securities involved in the sales between the parties and categorized each as covered or uncovered. The list of products listed as "not covered" included 37 Barclays Bank PLC notes.

Defendants, however, thought that McCann made a mistake in his categorization. In their view, the Barclays notes *were* covered. But rather than litigate this disagreement in the state court, Defendants removed the suit to district court a second time, arguing that McCann's report was a new "paper from which it may first be ascertained" that removal was proper, which gave them another chance at removal. 28 U.S.C. § 1446(b)(3). Plaintiffs quickly moved to remand the case again, citing the district court's first remand opinion. The district court granted the motion. *See Black v. Mantei & Assocs, Ltd.*, 2023 WL 7388943, at *3–4 (D.S.C. Nov. 8, 2023).

Additionally, Plaintiffs moved the court to award fees and costs under § 1447(c) for the second removal. The district court granted this motion too, finding that Defendants

"lacked a reasonable basis for removal" because "the Court ha[d] already addressed the issues raised" in its first removal decision. *Id*. at *4. Defendants were thus ordered to pay $63,007.50 to the Plaintiffs. *Black v. Mantei & Assocs., Ltd.*, 2024 WL 1681314, *5 (D.S.C. April 18, 2024).

Defendants timely appealed the fee award.

## II.    Discussion

We have before us two disputes about fees.[4]  First, Defendants contest the district court's fee award, seeking to escape their $63,007.50 bill.  Second, Plaintiffs ask us to award them additional fees for defending this appeal.  We grant the parties one win apiece, affirming the district court's award but refusing to award any more.

### A.    Granting Attorneys' Fees Below Was Not An Abuse Of Discretion

Defendants argue that the district court should not have made them pay the fees and costs Plaintiffs incurred in the second removal.  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).  That is, if the second removal was legally proper, awarding fees would not be appropriate. *Id.* at 140.  But even when removal was improper, "fees should be denied" so long as the removal was "objectively reasonable." *Id*. at 141.  So the removing party has some leeway to be wrong.  We consider first whether Defendants' second removal was improper, then consider whether it was so improper as to lack an

---

[4] We use "fees" as shorthand for "just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  § 1447(c).

9

objectively reasonable basis.  At the end, we find no abuse of discretion in the district court's decision to award fees.  *See Moses Enters., LLC v. Lexington Ins.*, 66 F.4th 523, 526 (4th Cir. 2023) (standard of review).

### 1.     Defendants' second removal was improper

Defendants' frontline position is that their second removal was legally proper.  They contend that Dr. McCann, Plaintiffs' expert witness, erred in labelling the Barclays notes as "not covered," and that this error gave them two bases for re-removal.  First, SLUSA, which they argue provides a right to have a federal court settle the dispute over whether the Barclays notes are covered.  And second, 28 U.S.C. § 1441, the general removal statute, which they argue permits removal because the dispute over the Barclays notes presents a federal question within the jurisdiction of the federal courts.  Both of these bases fail.

SLUSA permits removal when, in relevant part, the action is one "involving a covered security, as set forth in subsection (b)."  15 U.S.C. § 77p(c).  Thus, the cases that can be removed to federal court are the same cases that SLUSA precludes under § 77p(b); the scopes of the preclusion and removal provisions are coextensive.  *See Kircher*, 547 U.S. at 643.  That is why, after the case is removed, the district court has only two options. "If the action is not precluded," then removal was likewise not permitted, so the district court must "remand to the state court."  *Id.* at 644.  "If the action is precluded," then removal was permitted, and "the proper course is to dismiss."  *Id.*  So to check if Defendants could remove the case under SLUSA, we must see if the case would be precluded under SLUSA.

Subsection (b) doesn't cover every action that might colloquially be said to "involv[e] a covered security." § 77(c). Instead, SLUSA precludes only those covered class actions brought under state law where there is a "private party alleging" one of two types of activities "in connection with the purchase or sale of a covered security." § 77p(b)(1)–(2). The important aspect of § 77p(b) for our purposes is not the content of the two types of allegations—it's the fact that the scope of preclusion is tied to what the plaintiff is "alleging."

Since SLUSA's preclusion provision removes "adjudicatory power" from the state and federal courts, deciding whether a case is precluded is a "jurisdictional" determination. *Kircher*, 547 U.S. at 644. And "the determination of jurisdiction is based only on the allegations in the plaintiff's well-pleaded complaint—not on any issue the defendant may raise." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (quotation omitted). So the scope of preclusion under § 77p(b), and thus of removal under § 77p(c), are tied to the allegations in the complaint and the complaint alone. *See Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 395–97 (2014) (conducting a "search for allegations that might bring [the respondents'] allegations within the scope of [SLUSA]" solely within the "[r]espondents' complaints"). McCann's expert testimony, which is the sole cited reason for removal, can only be relevant to the extent it sheds light on an allegation already in the complaint.

That's bad news for Defendants. "The plaintiff is 'the master of the complaint,' and therefore controls much about her suit." *Royal Canin*, 604 U.S. at 35 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)). Plaintiffs here used their control to

explicitly eliminate any and all of their allegations that might be "in connection with the purchase or sale of a covered security." § 77p(b). By formal amendment to their complaint, they ensured that their suit only sought "damages caused by products *that do not qualify as 'covered securities' for purposes of [SLUSA]*." J.A. 639 (emphasis added). And they clarified in the amendment that they sought only to certify the class of "South Carolina citizens and the estates of deceased South Carolina citizens, who . . . were sold . . . a debt instrument . . . *that is not a 'covered security' under SLUSA*." J.A. 657 (emphasis added). By "legally bind[ing]" amendment, *Standard Fire Ins. v. Knowles*, 568 U.S. 588, 593 (2013), Plaintiffs were no longer "alleging" any activities "in connection with the purchase or sale of a covered security." § 77p(b). McCann's later testimony, erroneous or not, cannot change Plaintiffs' allegations.

That is not to say that the complaint must use "magic words" to trigger SLUSA. *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310 (6th Cir. 2009). It is "the substance of a complaint's allegations," not their precise form and wording, that matters when applying SLUSA. *Id.* "[A] claimant . . . cannot avoid [SLUSA's] application through artful pleading that removes the covered words from the complaint but leaves in the covered concepts." *Id.* at 311. Even when a complaint does not explicitly mention a covered security, SLUSA may still permit removal and preclude suit if the allegations in the complaint actually fall within the scope of § 77p(b) and (c).[5] For example, take a

---

[5] It is this possibility that has led some courts, and the Defendants here, to argue that SLUSA is an "exception to the well-pleaded complaint rule." Oral Arg. at 51:03 (citing *Romano v. Kazacos*, 609 F.3d 512, 519 (2d Cir. 2010)). But SLUSA is no exception—for the reasons we have explained, calling it one is a misnomer.

hypothetical complaint that merely alleges that the defendant "lied about the stock price during a sale last week."  The defendant could still remove and preclude the suit under SLUSA if a later expert report showed that the unnamed stock was, in fact, a covered security, assuming all other SLUSA requirements were met.  *See* 28 U.S.C. § 1446(b)(3) (permitting removal "within thirty days . . . [of] other paper from which first be ascertained that the case is one which is or has become removable").  The fact that the barebones hypothetical complaint fails to expressly state that the stock was a "covered security" or frame its allegation using 15 U.S.C. § 77p(b)(1)'s terminology of "untrue statement or omission of a material fact" does not alter the underlying substance of the allegation, which falls under SLUSA.

This is how the Plaintiffs' *original* complaint contained allegations that would have potentially placed the suit within SLUSA's preclusion provision.  Though the original complaint did not explicitly label any securities as covered, it "define[d] one category of included products . . . which had been sold to Plaintiffs and would also fit under the definition of a covered security."  *Black*, 2019 WL 5085414, at *3.  Defendants believed those products were covered and removed the case to federal court the first time.  But then Plaintiffs amended their complaint to eliminate the presence of all "covered concepts." *Segal*, 581 F.3d at 310–11.  The amendment was not just in form, but in substance.  And the amended complaint "is now the operative one; the old complaint has become

irrelevant." *Royal Canin*, 604 U.S. at 36. So post-amendment, back down in state court, Defendants could not remove a second time under SLUSA.[6]

Defendants fare no better under the general removal statute, 28 U.S.C. § 1441. That statute provides that if a district court would have "original jurisdiction" over a case, the defendant may remove the case from state court. § 1441(a). Here, the only asserted basis for original jurisdiction in state court is under § 1331, which grants jurisdiction to district courts over "all civil actions arising under the Constitution, laws, or treaties of the United States," also known as federal question jurisdiction. So whether Defendants could re-remove the suit under § 1441 depends on whether the district court had federal question jurisdiction over the case at the time of the second removal.

There are "two roads to federal court" by way of federal question jurisdiction. *Dillon v. Medtronic, Inc.*, 992 F. Supp. 2d 751, 755 (E.D. Ky. 2014) (Thapar, J.). The first road is where a plaintiff's complaint brings a "federal claim" under a "federal cause of action." *Id.* at 755–56 (citing *Am. Well Works. Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)). The second road is where a plaintiff's complaint that otherwise only has state-law claims contains "significant federal issues" embedded inside it. *Id.* at 756 (quoting

---

[6] That Plaintiffs can intentionally dodge federal court by amendment or other legally binding stipulation is no great oddity. For example, 28 U.S.C. § 1332(d)(2) provides jurisdiction to federal courts over certain class actions with an amount in controversy over $5,000,000. A bare promise that the allegations do not exceed the $5,000,000 threshold is insufficient to avoid federal court; when determining jurisdiction, a court must "ignore a nonbinding stipulation." *Standard Fire*, 568 U.S. at 595. But if the plaintiffs make a legally binding stipulation by that they seek less than $5,000,000, they can guarantee that the case stays in state court. *See id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) (same principle for § 1332(a)'s $75,000 amount in controversy requirement for non-class actions)).

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)).
Neither road takes Defendants home.

The first road to federal question jurisdiction is an immediate dead end because
Plaintiffs have brought exclusively state claims. They have sued for "breach of contract,"
"breach of fiduciary duty," "unjust enrichment," and "breach of contract accompanied by
a fraudulent act," and a number of "state securities act violations." J.A. 659–664. Federal
law plainly does not create any of these five asserted causes of action. While Defendants
may attempt to bring in issues of federal law—say, by arguing that SLUSA precludes the
action—it is hornbook civil procedure that a defendant cannot create federal question
jurisdiction through her defenses. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S.
149, 152–53 (1908); *Royal Canin*, 604 U.S. at 26.

The second road to federal jurisdiction is a dead end too because the federal issue
here is not "significant." *Grable*, 545 U.S. at 312. To be significant, a federal issue
embedded in a statelaw claim must be "(1) necessarily raised, (2) actually disputed,
(3) substantial, and (4) capable of resolution in federal court without disrupting the federal-
state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). This is
a conjunctive test, meaning that federal question jurisdiction will exist only "[w]here all
four of these requirements are met." *Id*; *see also Pressl v. Appalachian Power Co.*, 842
F.3d 299, 303 (4th Cir. 2016) ("Federal jurisdiction will lie only if a case meets all four
[*Gunn*] requirements.").

In this case, the federal issue fails the third requirement of substantiality. "The
substantiality inquiry" is concerned with "the importance of the issue to the federal system

as a whole," not the importance of the issue "to the particular parties in the immediate suit." *Gunn*, 568 U.S. at 260. The only issue Defendants assert is whether the Barclays notes are covered securities under SLUSA. We cannot see how this question, which pertains to a small number of financial instruments, could matter much beyond the confines of this suit. To the extent this question could have an impact in other federal lawsuits, the impact is far short of what would be required to place this case in the "special and small category" of cases that satisfy *Gunn*'s four-part standard. *Id.* at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). And without either ground for federal question jurisdiction, Defendants could not remove under § 1441.

With neither SLUSA nor § 1441 providing a basis for Defendants to re-remove, the second removal was improper.

### 2.    The improper removal was objectively unreasonable

Yet the propriety of Defendants' second removal is not the ultimate question. Rather, the ultimate question is whether Defendants were so objectively unreasonable in removing this action a second time such that they should be punished by having to pay Plaintiffs' attorneys' fees and costs. *See Martin*, 546 U.S. at 141. And for a removal to be objectively unreasonable, it must be more than wrong. *See id.* at 139–41; *cf. Common Cause v. Lewis*, 956 F.3d 246, 256–57 (4th Cir. 2020) (exploring other considerations). Defendants contend that, even if their removal was wrong, that's all it was.

But Defendants' second removal *was* more than wrong. Federal jurisdiction and removal can be confusing, hence the leeway given to a defendant to make a wrong-but-reasonable removal. Yet that same grace may not be extended to subsequent removals.

16

"Multiple removals could encounter problems—could even lead to sanctions—if nothing of significance changes between the first and second tries." *Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 783 (7th Cir. 1999) (citation omitted). "After a case has been remanded to state court, a second notice of removal *on the very same ground* that led to the initial removal . . . may be considered to have been interposed in bad faith." 14C Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3739 (Rev. 4th ed. 2025) (emphasis added).

A second removal on the very same grounds is precisely what occurred here. The district court explained in its first remand opinion that the case needed to return to state court because "the [amended complaint] eliminates the possibility the suit will ever implicate a covered security" and "no federal question remains." *Black*, 2020 WL 4432877, at *3. The complaint remained the same but Defendants removed again anyway, asserting the exact two removal rationales—SLUSA and federal question jurisdiction— that the district court rejected.

Defendants counter by saying that their second removal had an intervening event: McCann's testimony, which raised the possibility that the state court would conclude that the Barclays notes were covered securities. But the district court's first remand opinion answered this question too. It predicted that "a court might need to make later preclusion determinations on individual products" and presciently explained that such determinations would need to be made in state court because they would neither implicate SLUSA nor create a federal question. *Id.* And the district court noted its prior explanation in its second

remand opinion: "Inasmuch as the Court had already addressed the issues raised, Defendants lacked a reasonable basis for removal." *Black*, 2023 WL 7388943, at *4.

Even if Defendants believed the district court erred in deciding the SLUSA and federal question jurisdiction questions the first time, they were prohibited from removing a second time in the hopes of getting the district court to change its mind. Remand decisions "based on lack of subject matter jurisdiction or defects in removal procedure" are "not reviewable on appeal or otherwise." *Quackenbush*, 517 U.S. at 711–12 (interpreting § 1447(d)). When a suit removed under SLUSA is remanded for not being precluded by SLUSA, that remand is based on a lack of subject matter jurisdiction. *See Kircher*, 547 U.S. at 644. And "'otherwise' in § 1447(d) includes reconsideration by the district court." *In re Lowe*, 102 F.3d 731, 734 (4th Cir. 1996). So a defendant is statutorily prohibited from filing a motion for reconsideration of the remand in a SLUSA suit even when the district court's remand order was "manifestly, inarguably erroneous." *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1008 (4th Cir. 2014) (quotation omitted).

We see no reason to think that reconsideration by re-removal, as here, would be treated any differently than a motion for reconsideration. The "strict treatment" of remand decisions "serves the purposes of comity and judicial economy" by ensuring that the case does "not ricochet back and forth depending upon the most recent determination of a federal court." *Id.* (quotation omitted). Both state court comity and judicial economy are harmed *more* by re-removal, which ricochets the case, than they are by a motion for reconsideration. So § 1447(d) prohibited Defendants here from removing a second time after the district court had already remanded the case once.

Thus, Defendants' second removal was not just improper, but altogether lacked an "objectively reasonable basis." *Martin*, 546 U.S. at 141.  We accordingly find no abuse of discretion in the district court's fee award.

### B.      Granting Attorneys' Fees On Appeal Under § 1447(c) Is Not Permitted

Plaintiffs, having parried, now riposte.  In their view, on top of the district court's fee award below, they should receive an additional award for their fees and costs incurred defending this appeal.  They go so far as to claim that, having successfully defended the assessment of attorneys' fees below, § 1447(c) *automatically* awards them their fees and costs for defending this appeal.  Their argument relies on a trio of Seventh Circuit decisions interpreting § 1447(c).  To their credit, Plaintiffs accurately represent Seventh Circuit precedent.  But we respectfully disagree with the Seventh Circuit.  Not only is a fee award on appeal not automatic—it's not permitted by § 1447(c) at all.

The prohibition on awarding fees on appeal under § 1447(c) comes from the plain text of the provision.  "*An order remanding the case* may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  § 1447(c) (emphasis added).  Our decision in this appeal will not be an order remanding the case.  Indeed, we are not even reviewing an order remanding the case.  Instead, we are reviewing the decision to award fees in an order remanding the case.  We cannot discern in § 1447(c) any authority to award fees in such a posture.

Instead, an order remanding the case—and thus an award of fees under § 1447(c)— can only come from the district court, not the court of appeals.  This comports with § 1447's clear and exclusive textual emphasis on the district court.  The statute begins by stating that

19

"*the district court* may issue all necessary orders" to bring in the "proper parties" after removal. § 1447(a) (emphasis added). In the next subsection, the statute, having made its focus clear, refers to the district court as an "it" instead of by name because there is no question as to what entity is being empowered to "require the removing party to file with its clerk copies of all records." § 1447(b). When the authority to award fees in "[a]n order remanding the case" finally appears in the next subsection, it comes after a sentence that tells us when there can be such a remand order: When "it appears that *the district court* lacks subject matter jurisdiction, the case shall be remanded." § 1447(c) (emphasis added). It is hardly ambiguous which court must issue the remand order containing the fee award.

Even if the text of § 1447(c) were ambiguous—it's not—we would decline to broadly construe the statute as authorizing a fee award on appeal. "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). This "American Rule" is "deeply rooted in our history" and in the common law. *Id.* at 270–71. Statutes that allow one party to collect fees from the other are thus "in derogation of the common law," and "courts are obligated to construe them strictly." *In re Crescent City Ests., LLC*, 588 F.3d 822, 826 (4th Cir. 2009) (quotation omitted). Nothing less than an "explicit authorization" expressed "clearly and directly" will suffice. *Id.* at 825–26. Needless to say, that is not present here.

And even if the text of § 1447(c) authorized fee awards on appeal—it doesn't—a fee award would be discretionary at most. The statute only "provides that a remand order 'may' require payment of attorney's fees—not 'shall' or 'should.'" *Martin*, 546 U.S. at

136.  "The word 'may' clearly connotes discretion.  The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion."  *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)) (cleaned up).  When Congress wishes to make fee-shifting automatic, it knows how to use mandatory language.  *See, e.g.*, 15 U.S.C. § 1640(a) ("[A]ny creditor who fails to comply with any requirement imposed under this part . . . *is liable*. . . [for] the costs of the action, together with a reasonable attorney's fee as determined by the court.").  It did not do so here.

The Seventh Circuit's contrary interpretation of § 1447(c) is impossible to square with the statutory text.  This appears to be because the Seventh Circuit has never analyzed the statutory text.  Their first case interpreting § 1447(c) was *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407 (7th Cir. 2000), which justified its interpretation through a policy determination that automatically awarding fees on appeal upon a successful defense of a district court's fee award would "reduce the effectiveness" of bad-faith appeals "designed to increase [an] adversary's expenses."  *Id.* at 411.  This interpretation was then reiterated in *MB Fin., N.A. v. Stevens*, 678 F.3d 497, 500 (7th Cir. 2012), with a bare citation to *Garbie*.  And it was reiterated again in *PNC Bank, N.A v. Spencer*, 763 F.3d, 650, 655 (7th Cir. 2014), with a bare citation to *MB Financial*.  The Seventh Circuit may well have been right in *Garbie* that an automatic fee award on appeal makes good policy sense.  But we cannot read such a policy into § 1447(c).  "Our inquiry must cease if the statutory language is unambiguous."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  The statutory

21

language of § 1447(c) is unambiguous.  So we cease.  Consequently, we deny Plaintiffs' request for fees on appeal.[7]

*          *          *

Defendants removed their case once before.  After Plaintiffs amended their complaint, the district court remanded the case, correctly explaining that the case needed to continue in state court because it was no longer precluded by SLUSA and did not present a federal question.  Defendants then removed a second time—arguing that the case was precluded by SLUSA and presented a federal question.  This second removal was objectively unreasonable.  While we cannot award additional fees under § 1447(c) on appeal, the district court's fee award below is

*AFFIRMED.*

---

[7] While Plaintiffs have not argued for them, "just damages and single or double costs," including damages resulting from "delay," are available on appeal under Fed. R. App. P. 38 and 28 U.S.C. § 1912.  We may award such fees *sua sponte* after notice from the court when appropriate, such as when "an appeal is frivolous."  Fed. R. App. P. 38; *see In re Vincent*, 105 F.3d 943, 945 (4th Cir. 1997) (imposing costs under Rule 38).  But, under these circumstances, we elect not to provide relief Plaintiffs have not requested.